Freddie Lee SMITH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 90A04–8806–CR–204.

Court of Appeals of Indiana,
Fourth District.

May 22, 1989.

Susan K. Carpenter, Public Defender, Teresa D. Harper, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Defendant–Appellant Freddie Lee Smith (Smith) appeals his conviction for driving while intoxicated.  IND.CODE 9–11–2–2, 9–11–2–3.

We reverse.

Because we reverse, we address only the issue of whether there was sufficient evidence to support Smith's conviction.

In May, 1987, Joey Topp (Topp) was playing outside with her daughter.  Between 5:00 and 5:30 P.M. they watched as a black pick-up truck traveled down the gravel road in front of their house, crossed the opposite lane, traveled approximately ninety feet off the road, and struck their mailbox.  Though Topp yelled at the driver of the truck to stop, he kept going.  Topp told her husband of the incident and they proceeded to search for the truck.  They located it at Smith's residence and called the sheriff's office.

Sheriff's Deputy Houtz (Houtz) was dispatched to the Topp's residence at 7:36 P.M.  After gathering information, he arrived at Smith's residence at 8:02 P.M. Smith's wife answered the door and explained Smith was asleep in bed, but awakened him.  When Smith entered the room, Houtz observed Smith had poor balance and smelled of alcohol.  Smith admit-

ted driving the truck and hitting the mailbox, but nothing more. After he was given an implied consent advisement, Smith agreed to a blood test and two breathalyzer tests.

At 8:35 P.M., a blood sample was drawn from Smith. The laboratory analysis indicated a blood alcohol content in excess of .23%. At both 8:55 P.M. and 9:16 P.M., intoxilyzer tests indicated a blood alcohol content of .22%.

Smith was charged by information with leaving the scene of an accident, operating a motor vehicle after a finding of habitual traffic offender, driving while intoxicated as a class D felony, driving while intoxicated as a class A misdemeanor, and operating a motor vehicle with .10% or greater blood alcohol content as a class C misdemeanor.[1] He was later charged as being an habitual substance offender.

After a jury trial, Smith was found guilty of leaving the scene of an accident, operating a motor vehicle with .10% or greater blood alcohol content, and driving while intoxicated. Smith was sentenced to a term of 180 days for leaving the scene of an accident and a term of two years for driving while intoxicated as a class D felony.[2] His sentence was enhanced by eight years based on the trial court's finding he was an habitual substance offender. Subsequently, on its own motion, the trial court modified its sentence. The trial court ordered the remainder of Smith's sentence be served in the Wells County Jail pursuant to a work release program and various other conditions. Smith now appeals.

Smith argues there was insufficient evidence to support his conviction. He maintains the evidence fails to indicate he was intoxicated at the time he operated the vehicle. Thus, he posits the required temporal connection was not established.

When presented with a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Instead, we consider only the evidence most favorable to the State. If there is substantial evidence of probative value to support the jury's verdict, we will affirm the conviction. *Meredith v. State* (1987), Ind., 503 N.E.2d 880. We view the evidence in the light most favorable to the State. *Loyd v. State* (1980), Ind., 398 N.E. 2d 1260, 1264, *reh. denied.*

IND.CODE 9-11-2-2 and 9-11-2-3, the statutes under which Smith was convicted, provide as follows:

Sec. 2. A person who operates a vehicle while intoxicated commits a class A misdemeanor.

Sec. 3. A person who violates section 1 or section 2 of this chapter commits a class D felony if:

(1) he has a previous conviction of operating while intoxicated; and

(2) the previous conviction of operating while intoxicated occurred within the five (5) years immediately preceding the occurrence of the violation of section 1 or section 2 of this chapter.

The offense of operating a vehicle while intoxicated requires 1) the operation of a vehicle 2) by an operator 3) who is intoxicated. *Sering v. State* (1986), Ind. App., 488 N.E.2d 369, 374. The term "intoxicated", as defined by I.C. 9-11-1-5, means under the influence of alcohol, controlled substances, or drugs "such that

---

1. The information was later amended so that Count IV (driving while intoxicated) and Count V (driving with a blood alcohol content of .10% or greater) were reversed in order. Additionally, both counts could be elevated to a class D felony pursuant to I.C. 9-11-2-3.

2. There is some confusion as to the charge on which Smith was sentenced. At the sentencing hearing, the trial judge sentenced Smith on Count IV as a class D felony, which he stated was driving while intoxicated. In actuality, Count IV charged Smith with driving with a blood alcohol content of .10% or higher. We believe the trial judge entered judgment on the charge of driving while intoxicated for several reasons. First, Count IV, prior to the amended complaint, charged Smith with driving while intoxicated. Second, in the original complaint, only the charge of driving while intoxicated was elevated to a class D felony. Third, the judge actually named the charge of driving while intoxicated, which is more descriptive and less easily confused than the use of numbers. Fourth, Smith argues only to the charge of driving while intoxicated in his brief and the State fails to contradict the argument.

there is an impaired condition of thought and action and the loss of normal control of a person's faculties to such an extent as to endanger any person." *Id.* Thus, proof the driver was operating his vehicle in an impaired condition is an essential element of the crime of operating a vehicle while intoxicated. *Warner v. State* (1986), Ind. App., 497 N.E.2d 259, 261.

■ Here, Topp observed the black truck cross into the opposite lane, travel approximately ninety feet off the road, and hit her mailbox. Smith points out in his brief Officer Houtz, the investigating officer, testified the tire tracks on the road were consistent with a driver who had fallen asleep. The only other relevant evidence is Smith appeared intoxicated to Houtz at 8:02 P.M., nearly three hours after the mailbox incident took place, while Smith was in his own home, and the subsequent blood and breathalyzer tests showed Smith's blood alcohol content was .22% or greater at 8:35 P.M., 8:55 P.M., and 9:16 P.M.

There was, therefore, no direct evidence indicating Smith was intoxicated when he drove his truck. No one testified Smith was impaired due to intoxication at that time. In fact, there is no evidence of intoxication until nearly three hours after the incident occurred when Houtz observed Smith at home. The question is whether the fact he was intoxicated three hours later raises a reasonable presumption he was in an impaired condition when he operated his vehicle, one of the critical elements needed to be shown to support his conviction.

■ The State maintains the lapse of time between Smith's operation of his vehicle and the administration of the tests does not render the evidence insufficient. The State relies on I.C. 9–11–4–15 and I.C. 9–11–4–2, which provide:

I.C. 9–11–4–15:

Sec. 15. (a) At any proceeding concerning an offense under IC 9–11–2, evidence of the amount by weight of alcohol that was in the blood of the person charged with the offense:

(1) at the time of the alleged violation; or

(2) *within the period of time allowed for testing under section 2 of this chapter,* as shown by an analysis of the person's breath, blood, urine, or other bodily substance, is admissible.

(b) If, in a prosecution for an offense under IC 9–11–2, evidence establishes that:

(1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter, and

(2) the person charged with the offense had at least ten-hundreths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken;

*the trier of fact shall presume* that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable. (Emphasis supplied).

I.C. 9–11–4–2:

A law enforcement officer who has probable cause to believe that a person has committed an offense under this article shall offer the person the opportunity to submit to a chemical test. It is not necessary for the law enforcement officer to offer a chemical test to an unconscious person. A law enforcement officer may offer a person more than one (1) chemical test under this chapter. However all tests must be administered *within three (3) hours after the officer had probable cause to believe the person committed an offense* under IC 9–11–2. A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter. (Emphasis supplied).

Thus, the statutes provide there is a presumption the person charged had at least .10% blood alcohol content when he was driving provided 1) the person had at least .10% blood alcohol content when the test was conducted and 2) the test was

performed within three hours after the officer had probable cause to believe the person committed an offense under I.C. 9–11–2. The presumption, however, is rebuttable.

The State's reliance on I.C. 9–11–4–15, as stated above, is erroneous. I.C. 9–11–4–15 did not become effective until July 1, 1987. Here, the evidence is Smith committed the offense on May 1, 1987. As a general rule, we apply the statute in effect when the crime was committed. *Shelton v. State* (1979), 181 Ind.App. 50, 390 N.E.2d 1048, 1051. Thus, the statute, as stated above, cannot be applied to the facts of this case. At the time of the offense, I.C. 9–11–4–15 stated:

> 9–11–4–15. Admissible evidence.—At any proceeding concerning an offense under IC 9–11–2, evidence of the amount by weight of alcohol that was in the blood of the person charged with the offense at the time of the alleged violation, as shown by an analysis of his breath, blood, urine, or other bodily substance, is admissible.

Thus, under the former statute, there is no presumption of intoxication.

The State also relies on *Boyd v. State* (1988), Ind.App., 519 N.E.2d 182. It cites *Boyd* for the proposition it is unnecessary for the State to produce evidence extrapolating test results back to the time when the vehicle was operated when the evidence of intoxication is contemporaneous with vehicle operation.

It seems the State places undue emphasis on this case because *Boyd* specifically requires "evidence of intoxication." In the facts of *Boyd*, as well as the cases cited therein, the driver of the vehicle was initially stopped by an officer for a traffic offense. The evidence of intoxication was contemporaneous with the driving. Such evidence is absent in the case at bar, and a reasonable presumption he was intoxicated at the time does not arise from the fact he tested .23% blood alcohol content three hours later. Such fact may raise a suspicion or probability, but not a reasonable presumption sufficient to support Smith's conviction under this evidence.

Here, there is insufficient evidence Smith was in an impaired condition when he operated his vehicle. Consequently, there is a failure of proof on an essential element of the crime of driving while intoxicated. This failure is fatal to the State's case. *Warner, supra,* at 263.

Reversed and remanded with instructions to enter judgment in favor of Smith.

MILLER, J., concurs.

CHEZEM, J., dissents and files separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The majority is correct in its statement that proof the driver was operating his vehicle in an impaired condition is an essential element of the crime of operating a vehicle while intoxicated. I disagree, however that the evidence was insufficient to support the jury's verdict of guilty.

Although no one testified that Smith was drinking at the time of the incident, the jury was entitled to "draw reasonable inferences from facts established by the evidence." *McCann v. State* (1984), Ind., 466 N.E.2d 421, 423.

The evidence included these facts:

Topp observed Smith cross into the opposite lane, travel approximately ninety feet off the road, hit her mailbox and leave immediately at approximately 5:00 to 5:30 p.m.

Officer Houtz, the investigating officer, testified that the tracks could be consistent with those made by a driver who had fallen asleep.

Houtz found Smith at home, in a "deep sleep" and Smith appeared intoxicated at 8:02 p.m.

Smith's blood alcohol content tested .22% or greater at 8:35 p.m., 8:55 p.m. and 9:16 p.m.

Add to these facts the requirement of Indiana Code 9–4–1–40 that a "driver of any vehicle involved in an accident resulting in injury ... to property shall immediately stop such vehicle at the scene...." In addition, flight from the scene may be

considered as circumstantial evidence of a consciousness of guilt. *Burton v. State* (1988), Ind., 526 N.E.2d 1163, 1167.

These facts afford a basis from which the jury could reasonably infer that the reason Smith failed to stop was because he was alcohol impaired.