Roger C. ROBINSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A02–0503–CR–174.

Court of Appeals of Indiana.

Oct. 12, 2005.

Andrew E. Clark, Allen Wellman McNew, Greenfield, for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Roger C. Robinson appeals his conviction in a bench trial of failure to stop at an accident resulting in injury or death[1] as a Class B misdemeanor, failure to stop at an accident causing damage to the property of another person[2] as a class C misdemeanor, and operating a vehicle while intoxicated[3] as a Class A misdemeanor. He raises the following issues on appeal:

I.  Whether his convictions of failure to stop at an accident resulting in injury or death and failure to stop at

an accident causing damage to the property of another person violate double jeopardy principles.

II.  Whether there is sufficient evidence to support his conviction of operating a motor vehicle while intoxicated.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of June 24, 2004, Huntington Police Department Officer Matthew Hughes was dispatched to the scene of an accident involving a semi-tractor with no trailer that had been driven into a ditch. Officer Hughes observed that the semi's gas tank had ruptured and diesel fuel, antifreeze, and oil were leaking into the ditch. The semi was unoccupied. Sometime between 5:00 and 6:00 a.m., after Officer Hughes had been dispatched to the scene of the accident, Huntington County Sheriff's Department Deputy James Horne located the semi's owner, Robinson, and his son at a gas station located two to four miles from the site of the accident. Robinson explained that he had fallen asleep and driven the semi into the ditch. When Officer Hughes arrived at the gas station, he noticed the odor of an alcoholic beverage emanating from Robinson. The officer also noticed that Robinson's eyes were glassy and watery. Robinson admitted that he had been drinking alcohol. In addition, Robinson's clothes were ripped and in disarray, and he had a cut on his head. His son had a cut on his leg and was in pain. Robinson took a portable breath test ("PBT"), which showed a positive result for alcohol. He was subsequently transported to Parkview Huntington Hospital, where a blood test

---

1.  See IC 9–26–1–1.

2.  See IC 9–26–1–4.

3.  See IC 9–30–5–2(b).

showed that Robinson had a blood alcohol content of .13 grams of alcohol per 100 milliliters of his blood.

The State charged Robinson with failure to stop after an accident resulting in injury as a Class C misdemeanor, failure to stop after an accident resulting in damage to property other than a vehicle as a Class B misdemeanor, operating a vehicle while intoxicated as a Class A misdemeanor, and operating a vehicle with a BAC of at least .08 as a Class C misdemeanor. At a bench trial, Huntington County Emergency Management Director Aline Shriner testified that she arrived at the scene of the accident at approximately 4:45 a.m. to assess the damage caused by the leaking fuel, antifreeze and oil. Following the trial, the trial court entered a directed verdict on the charge of operating a vehicle with a BAC of at least .08, and convicted Robinson of the three other counts. Robinson now appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy

Robinson first contends that his convictions for failure to stop after an accident resulting in injury and failure to stop after an accident resulting in damage to property violate double jeopardy principles because there was a single accident. As the sole authority to support his contention, Robinson directs us to *Nield v. State*, 677 N.E.2d 79, 82 (Ind.Ct.App.1997). There, Toni Nield was convicted of two counts of failing to stop after an accident involving injury or death after she struck and seriously injured two motorcyclists while driving her car eastbound on 21st Street in Indianapolis. On appeal, she argued that her two convictions violated the double jeopardy prohibition against multiple punishments for the same offense because both convictions stemmed from one accident. We noted that legislative intent in enacting a statute is the key consideration when determining whether the double jeopardy clause protects against multiple punishments for the same offense under a particular statute. *Id.* at 81. Specifically, the whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the crime involved. *Id.* Thus, the touchstone of whether the double jeopardy clause is violated is the legislature's articulated intent. *Id.*

In *Nield*, we noted that IC 9-26-1-1 imposes certain enumerated duties upon a driver who is involved in an accident. *Id.* at 82. Those duties include immediately notifying law enforcement authorities that the accident occurred, providing information regarding the driver's identity, license and vehicle, and rendering assistance to injured persons. *Id.* We pointed out that the statute is framed in terms of "an accident" rather than the number of vehicles involved or the number of persons injured, and that had the legislature chosen to impose separate duties for each vehicle or person injured, it could have done so. *Id.* Thus, although Nield struck two separate motorcycles and injured two separate persons, we found that she was involved in only one accident within the meaning of IC 9-26-1-1, and could not be convicted twice under the statute for leaving the scene of that accident. *Id.* We therefore remanded the case to the trial court with instructions to the court to dismiss one of the convictions and to resentence Nield accordingly. *Id.*

The facts before us, however, are distinguishable from those in *Nield*. Here, unlike Nield, Robinson was not convicted of multiple counts of the same statute. Rather, he was convicted of two separate offenses under two separate statutes—one count of failure to stop at an accident resulting in injury or death under IC 9–

26–1–1 and one count of failure to stop at an accident involving property damage under IC 9–26–1–4.

■■■ Under the federal constitution, multiple convictions will not be precluded if each statutory offense requires proof of an additional fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The purpose of the *Blockburger* analysis is to determine whether as defined by the legislature, any two or more offenses are the same offense. *Games v. State,* 684 N.E.2d 466, 473 (Ind.1997), *cert. denied,* 525 U.S. 838, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998). In analyzing double jeopardy claims based on multiple punishments, we utilize a method of statutory interpretation in which the court is asked to determine whether the legislature intended to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. *Id.* The *Blockburger* test, also known as the same elements test, requires that we look only to the statutory elements of the offenses. *Id.* at 477.

IC 9–26–1–1 provides as follows:

The driver of a vehicle involved in an accident that results in the injury or death of a person shall do the following:

(1) Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.

(2) Immediately return to and remain at the scene of the accident until the driver does the following:

(A) Gives the driver's name and address and the registration number of the vehicle the driver was driving.

(B) Upon request, exhibits the driver's license of the driver to the following:

(i) The person struck.

(ii) The driver or occupant of or person attending each vehicle involved in the accident.

(C) Determines the need for and renders reasonable assistance to each person injured in the accident, including the removal or the making of arrangements for the removal of each injured person to a physician or hospital for medical treatment.

(3) Immediately give notice of the accident by the quickest means of communication to one (1) of the following:

(A) The local police department if the accident occurs within a municipality.

(B) The office of the county sheriff or the nearest state police post if the accident occurs outside a municipality.

(4) Within ten (10) days after the accident, forward a written report of the accident to the state police department.

IC 9–26–1–4 provides as follows:

(a) The driver of a vehicle that causes damage to the property of another person, other than damage to a vehicle, shall do the following:

(1) Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.

(2) Immediately return to and remain at the scene of the accident until the driver does the following:

(A) Takes reasonable steps to locate and notify the owner or person in charge of the property of the damage.

(B) Gives the person the driver's name and address and the registration number of the vehicle.

(C) Upon request, exhibits the driver's license of the driver if the driver is required to have a driving license to operate the vehicle.

(b) If after reasonable inquiry the driver of the vehicle cannot find the owner or person in charge of the damaged property, the driver of the vehicle shall do the following:

(1) Notify either the sheriff of the county in which the damaged property is located or a member of the state police department.

(2) Give the sheriff or state police department the information required by this section.

Looking only to the statutory elements of these offenses, it is clear that each of these statutes requires proof of an additional fact which the other does not. Pursuant to IC 9–26–1–1, Robinson was required to remain at the scene of the accident, determine the medical needs of his son, make arrangements for his son's transportation to a physician or hospital for medical treatment, and notify law enforcement authorities of the accident. On the other hand, pursuant to IC 9–26–1–4, Robinson was required to remain at the scene of the accident, and notify the State or law enforcement authorities of the property damage that the accident caused, including the release of diesel fuel, antifreeze, and oil into the ditch. Because each of these offenses requires proof of an additional fact which the other does not, Robinson's convictions under both of the statutes do not violate federal double jeopardy principles.

■ We now turn to Robinson's claim under the Indiana Constitution, which provides that "[n]o person shall be put in jeopardy twice for the same offense." Indiana Constitution, Article I, Section 14. In *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), our supreme court outlined the two-part test for whether two convictions violate Indiana's double jeopardy provision. First, we evaluate whether the statutory elements of the crimes are the same.

*Goldsberry v. State,* 821 N.E.2d 447, 458 (Ind.Ct.App.2005). Second, we evaluate whether the actual evidence used to convict the defendant of the two crimes is the same. *Id.*

■ The statutory elements analysis is the same as the test enunciated by the United States Supreme Court in *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. *Goldsberry,* 821 N.E.2d at 459. We have already determined that there is no double jeopardy violation in this case under this test. Under the actual evidence test, we must examine the evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. *Id.* To demonstrate that two offenses are the same, the appellant must show a reasonable probability that the facts used by the trier of fact to establish the essential elements of one offense were also used to establish the essential elements of the second offense. *Id.* The appellant must show more than a remote or speculative possibility that the same facts were used. *Id.* Here, Robinson has failed to make this required showing, and his argument therefore fails. We find no double jeopardy violation.

## II. Sufficiency of the Evidence

■ Robinson argues that there is insufficient evidence to support his conviction. Our standard of review for sufficiency of the evidence is well settled. *Altes v. State,* 822 N.E.2d 1116, 1121 (Ind.Ct.App. 2005), *trans. denied.* We will neither reweigh the evidence nor assess the credibility of witnesses. *Id.* We will consider only the evidence most favorable to the judgment together with all reasonable and logical inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value to support the judgment of the trier of fact, we will affirm. *Id.*

Here, Robinson contends that there is insufficient evidence that he was intoxicated at the time that he drove the semi.[4] We agree. Although we find no Indiana case dealing with the precise factual situation here, we believe Indiana cases do provide guidance, and support our determination that the evidence here is insufficient to support the trial court's judgment.

In *Floyd v. State*, 399 N.E.2d 449, 450 (Ind.Ct.App.1980), a police officer was dispatched to investigate an accident involving a 1966 Rambler in the 7000 block of Bluffton Road in Allen County. When the officer arrived at the scene, he noticed that there was no driver in the Rambler and questioned the passengers to ascertain who had driven it. *Id.* After an ambulance arrived and the injured passengers had been attended to, the officer drove south of the accident. *Id.* In the 6400 block of Bluffton Road, the officer saw a man who matched the description that the officer had previously been given. *Id.* The man, later identified as Ronald Floyd, was unable to stand and appeared to be intoxicated. *Id.* His speech was slurred and there was blood on him. *Id.* Floyd agreed to take a breathalyzer test and registered a .347 percent blood alcohol level. *Id.* He stated that he owned the Rambler, but denied driving it at the time of the accident.[5] *Id.*

The trial court convicted Floyd of driving while intoxicated, driving with a suspended license, and leaving the scene of the accident. *Id.* On appeal, Floyd argued that there was insufficient evidence that he had driven the vehicle. *Id.* The court noted the following relevant facts: 1) there was no testimony as to the length of time between when the accident happened and when the officer noticed Floyd; 2) no witness identified Floyd as the driver of the vehicle or established that he had ever driven it; and 3) none of the State's witnesses placed Floyd at the scene of the accident. *Id.* at 450–51. We summarized the evidence and concluded as follows:

> At best, [it] reveals that the defendant was seen six blocks from the accident sometime after its occurrence. He was in an intoxicated state and there was blood on him. He owned a 1966 Rambler. However, the mere suspicion or possibility of guilt is not sufficient to sustain a conviction .... To say with certainty that the defendant was the driver or operator under these facts is to rest the convictions upon surmise and conjecture and not upon proper and reasonable inferences inevitably drawn from the web of evidence. For these reasons the convictions cannot stand.

*Id.* at 451.

Similarly, the evidence before us reveals that Robinson was found two to four miles from the accident sometime after its occurrence. As in *Floyd*, there was no testimony as to the length of time between when the accident happened and when the officers found Robinson. Robinson showed signs of intoxication and there was blood on him. He owned the semi, and even admitted driving it, but there is no evidence that he had been drinking or was intoxicated at the time that he drove it. None of the State's witnesses either saw Robinson drive the semi or placed him at the scene of the accident. We agree with the analysis in *Floyd*; to say with certainty that Robinson drove the semi while he was intoxicated under these facts is to rest the convictions upon conjecture and not

4. IC 9–30–5–2 provides that a person who operates a vehicle in a manner that endangers another person while intoxicated commits a Class A misdemeanor.

5. It was revealed at trial that the Rambler was registered to one Donna Floyd.

proper and reasonable inferences drawn from the evidence.

*Smith v. State,* 547 N.E.2d 845 (Ind. 1989), also supports our decision. There, Freddie Smith was driving his truck southbound on a rural Wells County road when he drove off the roadway and struck a mailbox owned by Mr. and Mrs. Topp. *Id.* at 846. Mrs. Topp was standing near the mailbox and shouted at Smith to stop. *Id.* When he failed to do so, the Topps set out in search of Smith and his truck. *Id.* The Topps found the truck sitting in a driveway and called the police. *Id.* When an officer arrived at Smith's house, Smith's wife told the officer that Smith was sleeping. *Id.* She awoke her husband, who appeared to be intoxicated and had a blood alcohol content of .23 percent. *Id.*

A jury convicted Smith of leaving the scene, operating a vehicle with a .10 or greater blood alcohol content, and driving while intoxicated. *Id.* On appeal, Smith argued that there was insufficient evidence that he was intoxicated at the time that he operated the vehicle. *Smith v. State,* 538 N.E.2d 271, 272 (Ind.Ct.App.1989). This court noted that the investigating officer testified that the tire tracks Smith left on the road were consistent with a driver who had fallen asleep, and that Smith was intoxicated in his home a little less than three hours after the incident on the Topps' property. *Id.* at 273. However, there was no evidence of intoxication contemporaneous with the driving. *Id.* We concluded that the fact that Smith had a blood alcohol content of .23 three hours after the accident did not raise a reasonable presumption that he was intoxicated

at the time of the accident. *Id.* at 274. We therefore reversed Smith's conviction of driving while intoxicated. *Id.*

On transfer, our supreme court disagreed. *See Smith,* 547 N.E.2d at 845. Specifically, the court found that the fact that Mrs. Topp personally observed Smith drive in an erratic manner and ignore her shouts to stop in conjunction with the fact that Smith's blood alcohol content was high three hours later, constituted evidence from which the jury was entitled to deduce that he was in fact intoxicated at the time that he struck the mailbox. *Id.* at 846. The court further explained that the "evidence is as strong as one could expect in a hit and run situation." *Id.*

The facts before us are distinguishable from those in *Smith* in one critical way; no one saw Robinson drive in an erratic manner before the accident. In fact, no one saw him drive at all. No one saw him drink alcohol either, so there is no evidence as to whether he drank the alcohol before or after the accident. Based upon the foregoing, we find insufficient evidence to support Robinson's conviction of driving while intoxicated.[6] *See also Flanagan v. State,* 832 N.E.2d 1139 (Ind.Ct.App.2005) (finding insufficient evidence to support Flanagan's conviction of driving while intoxicated).

Affirmed in part and reversed in part.

MAY, J., and ROBB, J., concur.

---

6. Robinson also argues that the trial court erred in admitting into evidence his PBT results, his blood test results, and his admission that he had been drinking. Because this evidence was offered in support of the charges of operating a vehicle with a blood alcohol content of at least .08 and operating a vehicle while intoxicated, one of which resulted in a directed verdict in favor of Robinson and the other of which we reverse because of insufficient evidence, any error in admitting this evidence was harmless because it did not prejudice Robinson. *See DeBruhl v. State,* 544 N.E.2d 542, 545 (Ind.Ct.App.1989).