## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2019, 10:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bradley Keffer
Brooke Smith
Keffer Barnhart, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert A. Rowlett
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Guy Sheets,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 28, 2019

Court of Appeals Case No.
18A-CR-2027

Appeal from the Adams Circuit Court

The Honorable Chad E. Kukelhan, Judge

Trial Court Cause No.
01C01-1704-F1-1

**Mathias, Judge.**

[1] Guy Sheets ("Sheets") was convicted in the Adams Circuit Court of three counts: Count I child molesting (other sexual conduct), a Level 1 felony; Count II child molesting (fondling or touching of a minor), a Level 4 felony; and

[2] Count III child molesting (submitting to touching by a minor), a Level 4 felony. Sheets now appeals, arguing his convictions on Counts I and II violate the prohibition against double jeopardy and that his aggregate sentence of forty-two years is inappropriate in light of the nature of his offense and his character.

[3] We affirm.

## Facts and Procedural History

[4] Samantha Gumm ("Samantha") and Dustin Sheets ("Dustin") have two children, eight-year old R.S. and six-year old Z.S. In August of 2014, R.S. and Z.S. were removed from Samantha and Dustin's home and placed with Sheets, their paternal grandfather. The children lived with Sheets and his wife, Angie Sheets ("Angie"), for approximately eight months before they returned to live with Samantha and Dustin.

[5] At the end of 2016, Samantha and Dustin were moving and needed a temporary place to live. Samantha and Dustin along with R.S. and Z.S. stayed with Sheets for two to three months. Around Christmas, Samantha and Z.S. moved out of Sheets's home. However, Dustin and R.S. continued to reside with Sheets because Dustin was on house arrest and R.S. wanted to finish the school year at the same school she had been attending. Dustin later moved out

and stayed with Samantha and Z.S., leaving R.S. behind at her grandfather's house.

[6] During the periods when R.S. was not living at Sheets's home, R.S. would visit every weekend and routinely spend the entire weekend. Between December 2016 and the early months of 2017, Sheets and Angie had legal custody of R.S. In early 2017, R.S. moved out of Sheets's home and back in with her mother. On March 2, 2017, seven-year-old R.S. told her mother that Sheets had touched her inappropriately when she was living at Sheets's home. Samantha testified that R.S. was "frantic, hysterical, [and] crying" when she told her that Sheets had been touching her private parts. Tr. Vol. II, p. 161. Samantha took R.S. to the Adams Memorial Hospital emergency room to have R.S. evaluated for injuries.

[7] On March 6, 2017, R.S. was interviewed at the Fort Wayne Child Advocacy Center by Lorrie Freiburger ("Freiburger"). R.S recalled that she would sometimes sleep in the same bed as Sheets because she was afraid of the spiders that would come from the crack in the ceiling of her bedroom. Tr. Vol. II, pp. 214–15. R.S. stated that it was during these times that Sheets would "touch my private parts and he made me touch his." *Id.* at 213. R.S. stated that she touched Sheets's penis with her hand under his clothing and remembered it as being "hairy." Ex. Vol., State's Ex. 7 at 26:12–26:24. R.S. would attempt to pull her hand away, but Sheets would nonetheless compel her to place her hand on his genitals. Tr. Vol. II, pp. 217–18. When Freiburger asked R.S. how many

times Sheets touched her, R.S. responded, "a little over fifty." *Id.* at 220. R.S. said that these incidents made her feel "uncomfortable." Ex. Vol., State's Ex. 7 at 38:55–39:38. Later in the interview, R.S. stated that Sheets never touched her "monkey"[1] with anything other than his finger. Ex. Vol., State's Ex. 7 at 17:02–17:20. Freiburger asked R.S. whether Sheets touched her on the outside of the "monkey" or on the inside of her "monkey." *Id.* R.S. stated that it was on the inside. *Id.*

[8]     On March 9, 2017, police interviewed Sheets. Sheets denied molesting R.S. and stated that he and R.S. had "laid down together lots of times" when R.S. could not sleep. Ex. Vol., State's Ex. 13 at 7:59–8:25. Sheets explained that "the only way" something could have happened was if he molested R.S. while he was sleeping. *Id.* Sheets told the officer, "I didn't do anything that I know of." Ex. Vol., State's Ex. 13 at 15:45–16:28.

[9]     On April 10, 2017, the State charged Sheets with Count I, child molesting as a Level 1 felony; Count II, child molesting as a Level 4 felony; and Count III, child molesting as a Level 4 felony. Count I alleged that Sheets penetrated R.S.'s sex organ with his finger. Count II alleged that Sheets fondled or touched

---

[1] R.S. referring to the female sex organ.

R.S.'s sex organ. Count III alleged that Sheets submitted to touching of his sex organ by R.S with intent to arouse or satisfy his sexual desires.

[10] A two-day jury trial commenced on March 22, 2018. The jury found Sheets guilty as charged on all three counts of child molesting. A sentencing hearing was held on August 7, 2018. Prior to the hearing, the trial court received and read multiple letters written in support of mitigating Sheets's sentence. The court found the "magnitude" of the crime, the nature of the offense, and the fact that Sheets had care, custody, and control of R.S. when the crime was committed to be aggravators, the last being a statutory aggravator pursuant to Ind. Code § 35-38-1-7.1(a)(8). Sheets was ordered to serve an aggregate forty-two-year sentence. Specifically, he was ordered to serve thirty years executed at the Indiana Department of Correction for Count I. On Counts II and III, Sheets was sentenced to consecutive terms of six years for each count, and both sentences were suspended to probation upon release from incarceration on Count I, for a total of twelve years suspended to probation. Sheets now appeals.

## I. Double Jeopardy

[11] Sheets contends that his convictions for Level 1 felony child molesting and Level 4 felony child molesting violate his right to be free from double jeopardy. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. Art. 1, § 14. Our supreme court has developed a two-part test for Indiana double jeopardy claims, holding that "two or more offenses are the 'same offense' in violation of Article 1, Section 14, if,

with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999).

[12] The "statutory elements test" referenced in *Richardson* is essentially the same test enunciated in *Blockburger v. United States,* 284 U.S. 299 (1932). *Brown v. State,* 912 N.E.2d 881, 896 (Ind. Ct. App. 2009), *trans. denied.* Multiple convictions will not be precluded if each statutory offense requires proof of an additional fact that the other does not. *Robinson v. State,* 835 N.E.2d 518, 522 (Ind. Ct. App. 2005). We look only to the statutory elements of the offenses. *Id.*

[13] Sheets contends that his convictions for Count I and Count II child molesting violate the statutory elements test because "the State failed to delineate which of the occurrences [of child molestation] it attributed to Count I and which it attributed to Count II," and because "the acts alleged by the State in Counts I and II overlap significantly." Appellant's Br. pp. 13–14. We disagree. Level 1 felony child molesting requires "other sexual conduct," which involves penetration of the sex organ, while Level 4 felony child molesting requires fondling or touching with intent to arouse sexual desires. *See* Ind. Code § 35-42-4-3(a)(l) & (b). Because each offense requires proof of an additional fact which the other does not, there is no violation of the statutory elements test. *See Sloan v. State*, 947 N.E.2d 917, 924 (Ind. 2011) ("Sloan concedes that the statutory

elements of Class A felony child molesting and Class C felony child molesting are different.")

[14] Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Lee v. State,* 892 N.E.2d 1231, 1234 (Ind. 2008). To show that two challenged offenses constitute the "same offense," a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.* Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective. *Id.* The reviewing court may consider the charging information, jury instructions, and arguments of counsel. *Id.* Violations of Indiana's Double Jeopardy Clause are reviewed de novo. *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

[15] To convict Sheets of Level 1 felony child molesting as charged, the State was required to prove that Sheets,

> a person of at least twenty-one (21) years of age, did perform or submit to other sexual conduct as defined in Indiana Code Section 35-31.5-2-221.5. He penetrated [R.S.]'s sex organ with an object, to wit: his finger, a child under the age of fourteen years (14)[.]

Appellant's App. p. 16. As alleged in the charging information, the State proved that Sheets inserted his finger into R.S.'s vagina. In a video interview that was played before the jury, R.S. stated that Sheets made her "hold this of his and he put his finger down there on mine."[2] Ex. Vol., State's Ex. 7 at 15:06–15:15. Further, R.S. told the forensic interviewer that Sheets touched her inside of her "monkey," meaning that Sheets would place his finger inside R.S.'s labia majora. Tr. Vol. II, pp. 213–16.; Tr. Vol. III, pp. 5–6. From this evidence, the State proved that Sheets committed Level 1 felony child molesting.

[16] To convict Sheets of Count II Level 4 felony child molesting, the State was required to prove that Sheets

> did perform fondling or touching of [R.S.]'s sex organ, a child under the age of fourteen years, with the intent to arouse or satisfy the sexual desires of the child or defendant[.]

Appellant's App. p. 16. In support of the Count II Level 4 felony child molesting conviction, the State proved that Sheets touched R.S.'s genitals but did not penetrate on more than one occasion. In a video statement, R.S. told the interviewer that whenever Sheets touched her, he would do so under her clothes, engaging in skin-to-skin contact. Tr. Vol. II, pp. 213–16.

---

[2] By pointing to her own body parts and body parts on two diagrams of the male and female body, R.S. indicated that Sheets made her touch his penis and put his finger in her sex organ.

[17] The prosecutor clearly explained to the jury that it had to rely on distinct evidence in finding Sheets guilty under each count. Tr. Vol. III, pp. 38–40. The jury could find Sheets guilty under Count I (other sexual conduct) based on one of the fifty incidents and guilty under Count II (fondling or touching of a minor) based on a different instance out of the fifty incidents. *Id.* at 38. If the jury did not avail itself of that route, "the only other option" it had was to find Sheets guilty of Count I (other sexual conduct) based on the first time R.S. was molested and guilty of Count II (fondling or touching of a minor) based on the last time R.S. was molested, or vice versa. *Id.* at 38–39. The prosecutor's statements to the jury in closing arguments made it clear that the jury had to rely on different facts to convict Sheets of the two separate counts of "other sexual conduct" and "fondling or touching of a minor."

[18] The trial court further instructed the jury that they had to consider "the law and the evidence as it may apply to each count individually and separately from the other counts." Appellant's App. p. 126; Tr. Vol III, p. 57. Juries are presumed to fulfill their oath and follow the court's instructions. *Tabor v. State*, 461 N.E.2d 118, 125 (Ind. 1984). Given the evidence admitted at trial, counsel's arguments and the court's instructions, we may reasonably presume that the jury identified distinct, separate evidence for each count when finding Sheets guilty of each count.

[19] Although the charged acts often occurred together, there was independent and distinct evidence of both penetration and touching to support the Level 1 felony

and Level 4 felony child molesting convictions. *See Sloan,* 947 N.E.2d at 924 (rejecting the defendant's double jeopardy argument because the defendant penetrated the victim's vagina numerous times and on multiple occasions fondled and touched her breasts). Moreover, the fact that Sheets committed numerous acts, over fifty times, of child molesting "greatly weighs against" Sheets argument. *See id.* We conclude that there is no reasonable possibility that the jury used the same evidentiary facts to establish both the essential elements of the Level 1 felony child molesting charges and the essential elements of the Level 4 felony child molesting charges. Consequently, there is no double jeopardy violation.

## II. *Inappropriate Sentence*

[20] Sheets argues that his aggregate forty-two-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Specifically, Sheets argues that his sentence is inappropriate because he has no prior criminal history, has stable employment, R.S. was not physically harmed or threatened during the commission of his offenses, and approximately twenty-five individuals wrote letters to the trial court in support of mitigating his sentence.

[21] Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the

Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State,* 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State,* 868 N.E.2d 482, 491 (Ind. 2007)). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* Finally, although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008).

[22] In this case, Sheets was ordered to serve a thirty-year advisory sentence for the Level 1 felony conviction and the advisory six-year sentence for each Level 4 felony conviction. *See* Ind. Code §§ 35-50-2-4 & 5.5. The advisory sentence is a helpful guidepost for ensuring fairness, proportionality, and transparency in sentencing. *Hamilton v. State,* 955 N.E.2d 723, 726 (Ind. 2011) (citing Ind. Code § 35-50-2.1-3 (2008), which defined "advisory sentence" as "a guideline sentence that the court may voluntarily consider as the midpoint between the maximum sentence and the minimum sentence"). And because the "advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence." *Fernbach v. State,* 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (citing *Golden v. State,* 862 N.E.2d

1212, 1216 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*). Sheets was also ordered to serve consecutive sentences due to the heinous nature of his offenses.

[23] Crimes against children are particularly contemptible. *See Singer v. State,* 674 N.E.2d 11 (Ind. Ct. App. 1996). However, our supreme court and this court have found in various instances the imposition of consecutive sentences in child molest cases to be inappropriate. *See Rivers v. State,* 915 N.E.2d 141 (Ind. 2009) (finding that consecutive sentences totaling sixty years for two counts of child molesting to be inappropriate and revising to concurrent terms of thirty years); *Monroe v. State*, 886 N.E.2d 578, 580 (Ind. 2008) (explaining that consecutive sentences totaling 100 years for five counts of child molesting inappropriate and revising to concurrent terms of fifty years); *Walker v. State*, 747 N.E.2d 536, 538 (Ind. 2001) (imposing consecutive sentences totaling eighty years for two counts of child molesting was inappropriate and revised to concurrent terms of forty years); *Laster v. State*, 918 N.E.2d 428, 434 (Ind. Ct. App. 2009) (consecutive sentences totaling sixty-four years for two counts of child molesting inappropriate, revised to concurrent terms of thirty-six years). But based on our review of the record, we are unconvinced that revision is warranted here because both consecutive sentences were suspended to probation for a total of twelve years.

[24] Concerning the nature of the offense, Sheets repeatedly molested five-year-old R.S. more than fifty times over two-and-a-half years. The molestation included fondling and penetration of R.S.'s sex organs during a time when R.S. was

vulnerable and in need of her grandfather's support and protection. R.S. testified that after the incidents, "whenever [she would] stand up it kind of hurt." Ex. Vol., State's Ex. 7 at 16:41–17:31.

[25] "A harsher sentence is [] more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child. . . relationship." *Hillenburg v. State,* 777 N.E.2d 99, 108 (Ind. Ct. App. 2002). There is no question in this case that Sheets violated his position of trust with R.S. when he subjected her to repeated acts of molestation. Sheets was R.S.'s "favorite grandpa," and she lived with Sheets due to instability in R.S.'s parents' lives. Tr. Vol. II, p. 141.

[26] Concerning the character of the offender, Sheets has no prior criminal history. Sheets also cooperated in part with the police and was gainfully employed. Although Sheets may have been a productive member of society, the severe and grotesque nature of Sheets' actions toward his own granddaughter support the trial court's decision to impose advisory sentences and to order the sentences to run consecutively. Sheets has not met his substantial burden of persuading us that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

[27] Sheets's convictions for Count I child molesting and Count II child molesting do not violate the prohibition against double jeopardy. In addition, Sheets's

aggregate forty-two-year sentence is not inappropriate in light of the nature of his offense and his character. Accordingly, we affirm Sheets's convictions for child molesting and the sentences imposed.

Vaidik, C.J., and Crone, J., concur.