**Porfirio OZUNA, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 79A02–9706–CR–377.**

Court of Appeals of Indiana.

Dec. 30, 1998.

---

1094 ■ 

Nicholas C. Deets, Heide Sandy Deets & Kennedy, Lafayette, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Janet Brown Mallett, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Porfirio Ozuna (Ozuna), appeals his convictions for Criminal Confinement,[1] a Class B felony, and Intimidation,[2] a Class C felony.

Upon appeal, Ozuna presents the following issues for review:

(1) Whether the trial court committed reversible error by allowing an interpreter, who met with the State's witness and the prosecutor during a pre-trial conference at which Ozuna and his counsel were not present, to interpret that witness' testimony during trial; and

(2) Whether the trial court improperly instructed the jury on accessory liability when Ozuna was charged only as a principal.

We affirm.

During the early morning of September 11, 1996, Jorge Duran and his girlfriend, Carmen Marianna, were in Duran's apartment sleeping, when two men, who were looking for a man named Jamacho, entered the apartment. The two men, believing that Duran could help them locate Jamacho, led Duran out of his apartment and forced him into a vehicle. After searching for a while, the men proceeded to a trailer where Ozuna resided. Ozuna exited the trailer with a loaded rifle, entered the vehicle with the other three men and placed the rifle on his

---

1. I.C. 35–42–3–3 (Burns Code Ed. Repl.1994).

2. I.C. 35–45–2–1(b)(2) (Burns Code Ed. Supp. 1998).

lap. Ozuna then told Duran that the "older man's problem is my problem" and ordered Duran to inform the men of Jamacho's location. Record at 155. Ozuna also told Duran that it would "cost us nothing to kill you and throw your body off." Record at 155. After the men were unable to locate Jamacho, they drove back to Duran's apartment, where Duran was able to escape and notify the police regarding his abduction.

On September 16, 1996, Ozuna, was charged with confinement while armed with a deadly weapon, a Class B felony, and intimidation while drawing or using a deadly weapon, a Class C felony. Prior to trial, Dr. Garfinkel, a professor of Spanish and Education at Purdue University, attended a meeting with Duran and the prosecutor to determine if Dr. Garfinkel was able to understand Duran's dialect and would be able to serve as an interpreter at trial. During the meeting, Dr. Garfinkel asked Duran questions about the alleged incident, which enabled the prosecutor to take notes of Duran's responses. Also present at the meeting was an employee of the prosecutor's office and a member of the Lafayette Police Department, both of whom spoke Spanish and who also asked questions and provided translations for the prosecutor.

A jury trial commenced on February 19, 1997, during which the State called Duran as a witness. Because Duran communicated primarily in Spanish, the court appointed Dr. Garfinkel to serve as an interpreter. At one point during Duran's testimony, Ozuna objected, contending that Dr. Garfinkel was not providing an accurate translation. As a result, the court temporarily dismissed the jury and had Dr. Garfinkel sworn in as a witness. Thereafter, the prosecutor questioned Dr. Garfinkel regarding his qualifications as an interpreter and, in particular, his ability to translate the dialect which Duran spoke. Although Dr. Garfinkel admitted that certain Spanish words have no English equivalent, he believed that he was providing an accurate translation.

Ozuna's counsel then questioned Dr. Garfinkel regarding the accuracy of his translation of some of Duran's testimony. During the course of the questioning, Ozuna's counsel also learned of the pre-trial meeting between Dr. Garfinkel, Duran and the prosecutor. Ozuna's counsel then objected to Duran's testimony and requested a mistrial, contending that, because Dr. Garfinkel had an "independent meeting" with the prosecutor and Duran prior to trial, he was not an impartial court-appointed interpreter. Record at 177. Ozuna's counsel also argued that, although she was given notice that during the prior meeting Dr. Garfinkel was going to determine whether he was familiar with Duran's dialect, she was not provided notice that Duran would be discussing the abduction incident and that, therefore, she and Ozuna were denied the right to appear. Ozuna's objection was overruled and his motion for a mistrial was denied.

At the conclusion of the evidence, the State tendered two jury instructions concerning accomplice liability. Despite Ozuna's objection that the instructions were improper because he was charged only as a principal, the court instructed the jury pursuant to the State's instructions. Thereafter, the jury found Ozuna guilty of criminal confinement, a Class B felony, and intimidation, a Class C felony.

### I. Motion for Mistrial and Objection to Dr. Garfinkel as Court–Appointed Interpreter

Ozuna contends that the trial court committed reversible error by denying his motion for a mistrial and overruling his objection to Dr. Garfinkel serving as the court-appointed interpreter. Specifically, Ozuna contends he is entitled to a new trial because 1) he and his counsel were denied the right to be present during the "pretrial conference" which was "a critical stage of a criminal proceeding;" and 2) Dr. Garfinkel's meeting with Duran and the prosecutor disqualified him from serving as an impartial court-appointed interpreter. Appellant's Brief at 10.

■ The decision to deny a motion for a mistrial is committed to the sound discretion of the trial court. *Agnew v. State* (1997) Ind.App., 677 N.E.2d 582, 583, *trans. denied.* To prevail upon appeal, the defendant must demonstrate that he was subjected to grave peril. *Id.* The admission of evidence is also

left to the sound discretion of the trial court. *Sundling v. State* (1997) Ind.App., 679 N.E.2d 988, 992, *reh'g denied.*

### A. Right to be Present at the Pre-Trial Meeting

Ozuna argues that under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13, of the Indiana Constitution, he was denied his right to be present at the pre-trial meeting, which he contends was a critical stage of the criminal proceedings. He also contends that he was entitled to the assistance of counsel at the meeting.

#### 1. Defendant's Right To Be Present

■ The Sixth Amendment right of the accused to be present is rooted in the Confrontation Clause and guarantees a defendant the right to be present to confront the witnesses against him. *Ridley v. State* (1997) Ind., 690 N.E.2d 177, 180.[3] Thus, it is implicated when witnesses or hearsay are presented in the accused's absence and the accused is denied his right to confront and cross-examine those witnesses. *Id.* The Due Process Clause of the Fourteenth Amendment also guarantees a defendant the right to be present at a proceeding when the defendant's absence from it would prevent him from defending against the charges filed against him and would produce an unfair result. *Id.* Finally, Article 1, Section 13 of the Indiana Constitution[4] confers upon a defendant the right to be present. *Id.* at 181. However, it requires the defendant's presence only at those stages of the criminal proceeding which require the presence of a jury. *Id.*

■ Initially, we note that, because the pre-trial meeting did not require or contemplate the presence of a jury, Article 1, Section 13 was not implicated. *See Ridley, supra,* 690 N.E.2d at 181. The meeting was not dissimilar, in a procedural sense, from law enforcement interviews of witnesses or prospective witnesses at which a prosecutor may be present. Additionally, Duran's right to be present under the Sixth Amendment was not violated because Ozuna had an opportunity to confront and cross-examine Duran who testified during the trial. In fact, the record reveals that Ozuna's counsel cross-examined Duran on the meaning of certain words he used to describe the threats which the men made to him while he was confined. We similarly find that the Due Process Clause did not require Ozuna's presence. Although Ozuna contends that had he been present at the meeting, he would have "voice[d] his opinion on the various translations prior to them being aired to the jury," (Appellant's Brief at 14) he has not demonstrated that Duran's testimony was subject to more than one translation or that Dr. Garfinkel's translation was inaccurate. After Dr. Garfinkel was appointed by the court, he took an oath to make a "true translation" of Duran's testimony.[5] Thereafter, during trial when Dr. Garfinkel was questioned under oath, he stated that although there is not an English equivalent for every Spanish word, he felt that he was giving an accurate translation. Even assuming that a discrepancy in the translation existed, the jury was made aware of the variations during Ozuna's cross-examination of Duran. As a result, we fail to see how Duran's absence from the pre-trial meeting prevented him from defending against the charges against him or otherwise rendered the result of his trial unfair. Thus, Ozuna was not denied the right to be present during the pre-trial meeting.

#### 2. Right to the Assistance of Counsel

■ The Sixth Amendment also guarantees a defendant the right to have counsel present at any critical stage once adversarial proceedings have been commenced against him. *Wright v. State* (1992) Ind., 593 N.E.2d

---

3. In particular, it provides that the defendant is "to be confronted with the witnesses against him." U.S. CONST. amend. VI.

4. Specifically, Article 1, Section 13 provides that "[i]n all criminal prosecutions, the accused shall have the right to ... meet the witnesses face to face...."

5. *See* Ind. Evidence Rule 604 ("An interpreter is subject to the provisions of these rules relating to qualifications as an expert and the administration of an oath or affirmation to make a true translation.").

1192, 1199, *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540.[6] A critical stage is any formal or informal, in or out-of-court proceeding where counsel's absence might prevent the defendant from having a fair trial. *Callis v. State* (1997) Ind.App., 684 N.E.2d 233, 237, *trans. denied.* The purpose of having counsel present is to protect the accused in situations where the result of the confrontation might affect the outcome of his trial and reduce his trial to a mere formality. *Gibbs v. State* (1993) Ind.App., 610 N.E.2d 875, 877. According to Ozuna, the pre-trial meeting was a critical stage of the proceeding because during the conference, Dr. Garfinkel was attempting to decipher Duran's particular dialect and the meaning of key phrases which were subject to "multiple translations." Appellant's Brief at 14. He also contends that Dr. Garfinkel's translations of those key phrases was inaccurate.

■ The essence of Ozuna's argument is similar to his previous argument. However, as stated above, there is no evidence that Duran's testimony was subject to more than one translation or that Dr. Garfinkel's translation at trial was inaccurate. Further, counsel had the opportunity and in fact questioned Duran regarding the meaning of certain words used during his testimony. Therefore, we fail to see how Ozuna's counsel's presence at the pre-trial meeting would have somehow changed Dr. Garfinkel's translation of Duran's testimony during trial. Therefore, the pre-trial meeting was not a critical stage of the proceedings. As a result, Ozuna was not denied the right to have counsel present.

### 3. *Indiana Trial Rules*

Finally, Ozuna relies upon our Supreme Court's holding in *Rita v. State* (1996) Ind., 674 N.E.2d 968, to support his contention that he and his counsel had a right to be present at the pre-trial meeting. In *Rita,* the trial court enforced two subpoenas issued by the State for the taking of ex parte statements from two witnesses to a fatal accident who refused to cooperate. *Id.* at 969. How-

ever, when the defendant made a similar request to interview the same witnesses, his request was denied. *Id.* Upon appeal, our Supreme Court concluded that the trial court had erroneously enforced the subpoenas and improperly denied the defendant the same opportunity as the State to interview the prospective witnesses. *Id.* at 970. In reaching its decision, the Court noted that ex parte discovery contravenes the reciprocal discovery rights secured by the Indiana Trial Rules. *Id.* The Court further found that Indiana Trial Rules 30 and 31 require the State to provide notice to the defendant when it intends to depose prospective witnesses and specifically concluded that a "party and the party's lawyer, subject only to very unusual exceptions ... are entitled to notice of, and the right to attend, any questioning." *Id.* at 971. It is upon this particular statement that Ozuna relies to support his contention that he and his counsel had a right to attend the pre-trial meeting.

Although at first glance, this statement, read in isolation, seemingly supports Ozuna's contention, a closer look at the bases for the decision prompts a different result. First, *Rita* involved compulsory subpoenas issued by the State compelling uncooperative witnesses to appear and give statements. The case before us reflects a consensual and informal meeting for the purpose of determining an appropriate means of communication between the Spanish-speaking witness and English-speaking attorneys, jurors and the judge. Second, the defendant in *Rita* attempted to secure but was denied an opportunity to interview the same witnesses which the State interviewed prior to trial. In the instant case, there is no indication that Ozuna attempted but was denied the opportunity to interview Duran prior to trial. Further, the Court in *Rita* found that the notice requirements imposed upon the State for deposing a witness were dictated by the trial rules. Because the *Rita* court extensively discussed the rules applicable to depositions, it must be presumed that the witnesses in *Rita* were deposed. Here, however, there is

---

**6.** Specifically, the amendment provides that the defendant is entitled "to have the assistance of

counsel for his defense." U.S. CONST. amend. VI.

nothing of record to indicate that the State was formally deposing Duran during the pre-trial meeting or that Duran was placed under oath. Therefore, the prosecutor was not bound by the notice requirements of Trial Rules 30, 31 or 45. Finally, we are not aware of any trial rule which requires the prosecutor to provide notice to the accused before the prosecutor intends to interview prospective witnesses prior to trial. Therefore, we hold that the decision in *Rita* is inapplicable to the case before us.

### B. Impartial Interpreter

Ozuna contends that Dr. Garfinkel should not have been permitted to serve as the court-appointed interpreter during the trial because he had an independent meeting with the prosecutor and State's witness Duran prior to trial. Specifically, Ozuna contends that the meeting with Duran in the presence of the prosecutor created an "appearance of interest on [Dr. Garfinkel's] behalf and suspicion he was not neutral and impartial." Appellant's Brief at 12.

As Ozuna contends, a court-appointed interpreter should be free from any appearance of interest or favor toward either party. *Bielich v. State* (1920) 189 Ind. 127, 126 N.E. 220. In *Bielich*, for example, our Supreme Court held that an arresting officer should not be permitted to serve as an interpreter for the defendant during the defendant's trial. *Bielich*, 189 Ind. at 136, 126 N.E. at 223. Specifically, the Court held that the "person acting as interpreter ... should be entirely free from any suspicion of interest in either the conviction or acquittal of the party accused." *Id.* Despite Ozuna's contention, we cannot say that Dr. Garfinkel's meeting with Duran prior to trial created an appearance that Dr. Garfinkel was interested in Ozuna's conviction or acquittal.

There is nothing of record to suggest that Dr. Garfinkel was involved in the alleged crime as a witness or arresting officer or that he was related to any of the witnesses. Rather, the record reveals that Dr. Garfinkel was a professor of Spanish and Education at Purdue University. The record further reveals that, although Dr. Garfinkel met with Duran in the presence of the prosecutor prior to trial, the purpose of the meeting was to determine whether Dr. Garfinkel was familiar with Duran's specific Spanish dialect so that he could serve as the interpreter at trial. Although the record also reveals that Dr. Garfinkel's presence at the pre-trial meeting may have allowed the prosecutor to note Duran's responses to questions, we cannot say that this isolated incident, in light of all of the factors which point to Dr. Garfinkel's impartiality, would cause him to become interested in Ozuna's conviction or acquittal. Thus, the trial court did not err by allowing Dr. Garfinkel to serve as the court-appointed interpreter during trial. Accordingly, because Ozuna and his counsel were not denied the right to be present during the pre-trial meeting [7] and the trial court did not erroneously permit Dr. Garfinkel to serve as the court-appointed interpreter, we find no support for Ozuna's contention that he was subjected to grave peril. As a result, the trial court did not abuse its discretion by denying Ozuna's motion for a mistrial and overruling Ozuna's objections to Dr. Garfinkel's service as the court-appointed interpreter.

### II. Instructions on Accessory Liability

Finally, Ozuna contends that the trial court erroneously instructed the jury that he could be found guilty as an accessory to the crime when he was charged only as a principal.[8] According to Ozuna, the State's failure to charge him as an accessory denied him his due process right to notice of the charges

7. The fact that defense counsel did not attend the meeting because she was unaware that the criminal incident would be discussed, does not equate to a denial of the right to be present.

8. Count one of the charging information stated that "Nicanor H. Arteaga, Portirio [sic] Ozuna, and Gerardo Salas did knowingly and intentionally remove another person, to wit: Jorge Duran, by fraud, enticement, force, or threat of force from one place to another, which was committed while armed with a deadly weapon, to wit: a firearm." Record at 8. Count two alleged that "Nicanor H. Arteaga, Portioa [sic] Ozuna, and Gerardo Salas, did communicate a threat to another person, to wit: Jorge Duran, with the intent that the other person engage in conduct against his will, said threat being to commit a forcible felony while drawing or using a deadly weapon, to wit: a firearm." Record at 10.

against him and to adequately prepare his defense for trial.

■ It is well settled that a defendant may be convicted as an accessory even while charged only as a principal. *Jones v. State* (1998) Ind., 697 N.E.2d 57; *Whitener v. State* (1998) Ind., 696 N.E.2d 40; *Johnson v. State* (1988) Ind., 518 N.E.2d 1073; *Abrams v. State* (1980) 273 Ind. 287, 403 N.E.2d 345. It is also well established that instructions as to an accused's liability as an accessory are proper even if the accused is charged as a principal, so long as the evidence presented by the State at trial supports those instructions. *Perry v. State* (1989) Ind., 541 N.E.2d 913; *Johnson, supra* at 1077; *Taylor v. State* (1986) Ind., 495 N.E.2d 710.[9] Despite these pronouncements, Ozuna argues that, in order to comply with the due process provisions of the United States and Indiana Constitutions, the State was required to give him some pre-trial notice that it intended to try him as an accessory rather than as a principal.

■ In support of his contention, Ozuna directs our attention to our Supreme Court's decision in *Thacker v. State* (1990) Ind., 556 N.E.2d 1315. In *Thacker*, the defendant challenged the State's ability to try him as an accessory after she was charged only as a principal in the shooting and killing of the victim. *Id.* at 1322. Specifically, the defendant argued that the charging information did not provide her with notice that the State intended to try her as an accessory. *Id.* While addressing the defendant's argument, the Court first noted the longstanding rule that a defendant may be charged as a principal and convicted as an accessory. *Id.* Nevertheless, the Court further noted that it has become "common practice to allege specific

acts of aiding and inducing in the charging instrument." *Id.* The Court also noted that the defendant, in fact, had received notice of the State's intent to proceed upon a theory of accessory liability because the defendant knew that others had been charged with the same crime, the defendant was read the aiding and causing statute during her arraignment and the State amended its information during voir dire to include the allegation that the defendant had hired another to commit the murder. *Id.* Based on these facts, the Court concluded that the defendant had been provided notice that the State intended to proceed under the aiding and abetting statute. *Id.* at 1322–23. Therefore, the Court concluded that the trial court did not err by instructing the jury on accessory liability. *Id.* at 1323. According to Ozuna, the holding in *Thacker* creates a notice requirement which compels the State to provide pre-trial notice to a defendant when it intends to proceed upon a theory of accessory liability at trial.

■ Despite Ozuna's contention, we do not read *Thacker* to establish a notice requirement. Rather, the holding in *Thacker* is consistent with the longstanding proposition that a defendant need not be charged as an accessory in order to be convicted of the underlying charge. The *Thacker* court, in fact, reiterated this well-settled principal of law. The *Thacker* court's observation that the defendant was given notice was made in addition to its finding that notice was not required and made solely to rebut the defendant's claim to the contrary.[10] Therefore, we decline to adopt Ozuna's interpretation of *Thacker*. The trial court did not err by

9. Although not challenged by Ozuna, we note that the instructions on accessory liability were supported by the evidence. During trial, evidence revealed that Ozuna was always present when the two men threatened Duran and aided the two men in confining Duran by "always guarding" him. Record at 222.

10. In any event, we find that Ozuna was placed on notice that he could be tried as an accessory. As stated above, the law regarding accessory liability is well-established. Further, Ozuna was charged along with the other two men in the same information. Therefore, counsel should

have known that Ozuna could have been convicted as an accessory to the crime.

Furthermore, during the State's opening argument, the prosecutor referred to the statute on "aiding, inducing, and causing" and informed the jury that "if I help somebody commit a crime I'm just as guilty as they are." Record at 72. At that point, counsel could have attempted to request a continuance if she were not prepared to present an adequate defense. Nevertheless, counsel did not object and, following the State's case-in-chief, presented an adequate defense, attempting to show that Ozuna had tried to calm the other two men and to help Duran escape.

instructing the jury with respect to accessory liability.

The judgment is affirmed.

SHARPNACK, C.J., and HOFFMAN, Senior Judge, concur.