Lavern BALTIMORE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 22A01–0701–CR–42.

Court of Appeals of Indiana.

Dec. 13, 2007.

Transfer Denied Feb. 22, 2008.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Lavern Baltimore appeals his convictions for Burglary Resulting in Bodily Injury,[1] a class A felony, and Sexual Battery,[2] a class D felony. Specifically, Baltimore argues that (1) the trial court committed fundamental error when it permitted the victim's sign language interpreter to testify as a witness for the prosecution; (2) insufficient evidence was presented at trial to sustain his burglary resulting in bodily injury convic-

tion; (3) his convictions violate the Indiana Double Jeopardy Clause because there is a reasonable likelihood that the jury used the same evidence to sustain both convictions; and (4) the trial court's imposition of a fifty-three-year sentence is inappropriate in light of the nature of the offenses and Baltimore's character. Finding no error, we affirm the judgment of the trial court.

### FACTS [3]

In June 2006, Sandra Wright and David Whitten, a married couple, lived in a Floyd County apartment complex with their son. Sandra is deaf and David is hard of hearing. Baltimore lived in the same apartment complex as Sandra and David. On the evening of June 15, 2006, Baltimore knocked on Sandra and David's door and asked David for a cigarette. Although David asked Baltimore to leave, Baltimore came back multiple times and continued to knock on the door. Sandra eventually fell asleep in the family room with the couple's son, and David fell asleep in the bedroom.

At approximately 2:00 a.m., Sandra awoke and saw Baltimore inside the apartment, very close to her. Baltimore grabbed Sandra by the neck and arms, leaving marks on her skin. Baltimore picked up Sandra's son and kissed him. Sandra, who believed Baltimore was "using drugs and was drunk," took her son and put him back to bed. Tr. p. 305. Baltimore then grabbed Sandra's neck and dragged her into the hallway, placing his hands under Sandra's shorts and on her breasts. David awoke to his wife's screams and found Baltimore in the family room with one hand on Sandra's face and

---

1. Ind.Code § 35–43–2–1.

2. Ind.Code § 35–42–4–8.

3. We held oral argument at Jasper High School in Dubois County on November 29,

2007. We commend counsel for their oral presentations and thank the Jasper High School staff and students and the Dubois County Bar Association for their hospitality.

the other on her breast. David told Baltimore to leave and he obeyed. After Baltimore left, David tried to close the front door of the apartment but was unable to do so because it was damaged.

On June 19, 2006, the State charged Baltimore with class A felony burglary resulting in bodily injury and class D felony sexual battery. A jury trial was held on August 22, 2006, and the jury found Baltimore guilty as charged. The trial court held a sentencing hearing on November 20, 2006, and sentenced Baltimore to an aggregate term of fifty-three years imprisonment. Baltimore now appeals.

## DISCUSSION AND DECISION

### I. Interpreter's Testimony

Because Sandra is deaf and unable to articulate her thoughts through speech, a sign language interpreter, Tammy Cantrell, assisted during the trial and communicated with Sandra using American Sign Language (ASL).[4] Before trial, the State filed a supplemental witness list, expressing its intent to call Cantrell as a witness at trial. While Baltimore consented to Cantrell's testimony "as to the limited issue of the explanation of what sign language is[,]" he objected to any testimony regarding "anything beyond a strictly not related to this particular person, uh, discussion of an explanation of sign language to the jury." Tr. p. 69. The trial court overruled Baltimore's objection, allowing Cantrell to testify regarding basic ASL principles and "her experiences and what she has observed with [Sandra]." Id. at 83. The State called Cantrell as a witness on the second day of trial.

■ The gravamen of Baltimore's argument on appeal is that the trial court

violated the well-settled principle that court officers must remain impartial and that the State used Cantrell's testimony "in an attempt to mitigate its problem with Sandra's version of the events." Appellant's Br. p. 21. The decision to allow a witness to testify is left to the sound discretion of the trial court and we will reverse only for an abuse of that discretion. Julian v. State, 811 N.E.2d 392, 399 (Ind. Ct.App.2004). A defendant's right to an impartial forum is fundamental:

> We must state again that in order for the criminal justice system to survive, our courts must be forums in which all parties can receive a fair and impartial trial. Impartiality insures that persons guilty of crimes be convicted and punished, and that innocence be likewise determined.

Brannum v. State, 267 Ind. 51, 59, 366 N.E.2d 1180, 1185 (Ind.1977).

We have previously held that a court-appointed interpreter should be free from any appearance of interest or favor toward either party. Ozuna v. State, 703 N.E.2d 1093, 1099 (Ind.Ct.App.1998). And our Supreme Court has previously held that an arresting officer should not be permitted to serve as an interpreter for the defendant during trial. Bielich v. State, 189 Ind. 127, 126 N.E. 220, 223 (Ind.1920). Specifically, the Bielich court concluded that "[t]he person acting as interpreter ... should be entirely free from any suspicion of interest in either the conviction or acquittal of the party accused." Id.

Baltimore emphasizes the disjointed nature of Sandra's testimony and argues that her testimony was internally inconsistent. By allowing Cantrell to testify about Sandra's communication difficulties, Baltimore

---

4. While Cantrell testified that she was being "reimbursed for [her] services[,]" it is unclear whether the trial court appointed her or whether she was independently obtained by the prosecution. Tr. p. 271.

argues that the State impermissibly used Cantrell's testimony to remedy material flaws in Sandra's testimony and vouch for her credibility. Baltimore cites the State's closing argument as evidence:

> Now we're going to go into [Sandra's] testimony today. You can't take her testimony without looking at her background.... It's not your typical witness. You can't just have 'em go out there and say, okay, tell your story, and then go to all the specifics, because it just plain doesn't work for whatever reason. You could see that not only in questions that were important to the case, specifics about the case, things as simple as how did you meet your husband, she had a difficult time understanding.... *It doesn't mean that she's lying. It doesn't mean she's not telling the truth. It's just that there's this communication problem.... Just don't forget about the nature of signing. That's why I had [the interpreter] testify because it's not like a direct translation.*

Tr. p. 368–69 (emphasis added).

■ While Baltimore made a pretrial objection to Cantrell's testimony regarding her experiences with Sandra, he did not renew his objection when Cantrell testified during the trial. Consequently, he has failed to preserve any error and waived this issue on appeal by not contemporaneously objecting to the admission of the evidence at trial. *Culver v. State,* 727 N.E.2d 1062, 1065–66 (Ind.2000).

■ Nonetheless, Baltimore argues that the trial court's decision to permit Cantrell to testify for the State amounted to a fundamental error that deprived him of a fair trial. Fundamental error is defined as any error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. *White v. State,* 846 N.E.2d 1026, 1032 (Ind.Ct.App.2006),

*trans. denied.* To be considered fundamental, an error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Spears v. State,* 811 N.E.2d 485, 488 (Ind. Ct.App.2004).

■ Cantrell testified immediately before Sandra and, as the State argues, Cantrell's testimony was offered so that the jury would have a better understanding of the nature of ASL and Cantrell's experiences with Sandra. Cantrell testified that she was "[i]mpartial" and not "an advocate in this case one way or the other." Tr. p. 279. She testified that some words in English do "not [have] a one on one correspondence" with ASL signs and that "most things have to be interpreted conceptually." *Id.* at 274. Cantrell testified that she had known Sandra for less than one week and that "there's some signs that I used she didn't know and so I needed to adjust them to find what she did use for that concept. And um, also that the English language of spelling things out didn't always work." *Id.* at 282. Nevertheless, Cantrell testified that she felt "confident" that she could do a "fairly good job" interpreting for Sandra. *Id.*

Cantrell's testimony did not render Baltimore's trial unfair because Cantrell clearly stated that she was impartial and not an advocate at trial. Her testimony was introduced to inform the jury about ASL, the nature of signing, and Cantrell's limited experiences with Sandra. In fact, the portion of Cantrell's testimony regarding her experiences with Sandra only constitutes two pages of the 412–page trial transcript. Because the admission of Cantrell's testimony was not a blatant violation of basic principles that rendered a fair trial

impossible, we do not find fundamental error.

## II. Sufficiency

Baltimore argues that there was insufficient evidence presented at trial to sustain his burglary resulting in bodily injury conviction. When addressing sufficiency of the evidence challenges, we neither reweigh the evidence nor judge the credibility of the witnesses. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). We consider only the probative evidence and reasonable inferences therefrom that support the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). If there is conflicting evidence, we consider that evidence only in the light most favorable to the judgment. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.* at 147.

A conviction may be sustained based on circumstantial evidence. *Pickens v. State,* 751 N.E.2d 331, 334 (Ind.Ct.App. 2001). Circumstantial evidence need not exclude every reasonable hypothesis of innocence; rather, circumstantial evidence can sustain a conviction if an inference may reasonably be drawn from the evidence to support the judgment. *Id.* A conviction may be sustained on the uncorroborated testimony of a single witness or victim. *Mathis v. State,* 859 N.E.2d 1275, 1281 (Ind.Ct.App.2007).

To convict Baltimore of class A felony burglary, the State was required to prove beyond a reasonable doubt that he knowingly broke and entered the building or structure of another person with the intent to commit a felony therein, causing bodily injury to a person other than himself. I.C. § 35–43–2–1. Baltimore contends that there was insufficient evidence presented to prove beyond a reasonable doubt that he broke into David and San-

dra's apartment. While he admits that "the evidence disclosed at trial that the front door sustained significant damage at some point," he emphasizes that there was no evidence that he was responsible for that damage and that neither David nor Sandra saw him break into the apartment. Appellant's Br. p. 10.

As support for his argument, Baltimore directs our attention to *Robinson v. State,* 835 N.E.2d 518 (Ind.Ct.App.2005). In *Robinson,* law enforcement officers were dispatched to the scene of an accident and discovered the defendant's unoccupied semi-truck in a ditch. The officers ultimately discovered the defendant four miles from the accident scene, smelling of alcohol and showing signs of intoxication. The defendant was convicted of driving while intoxicated but we reversed his conviction on appeal, holding that

> [t]he evidence before us reveals that Robinson was found two to four miles from the accident sometime after its occurrence.... [T]here was no testimony as to the length of time between when the accident happened and when the officers found Robinson.... [T]o say with certainty that Robinson drove the semi while he was intoxicated under these facts is to rest the conviction upon conjecture and not proper and reasonable inferences drawn from the evidence.

*Id.* at 524.

Baltimore argues that "[j]ust as the evidence of intoxication could not be linked to the defendant's act of driving in *Robinson,* the evidence of the broken door in this case cannot be linked to [Baltimore's] act of entering the apartment." Appellant's Br. p. 11. We disagree. Initially, we note that the intoxicated defendant in *Robinson* was found miles from the accident scene an unspecified amount of time after the accident and we reversed his conviction on

appeal because "there was no evidence as to whether he drank the alcohol before or after the accident." 835 N.E.2d at 525. Here, however, David testified that the door was locked when he and Sandra went to bed but that it was broken and he "couldn't lock it" after he "made [Baltimore] leave." Tr. p. 234. While the defendant in *Robinson* was found *miles* from the accident scene, Baltimore was found *inside* the apartment and evidence was presented that the door was intact before he entered the apartment. In sum, while neither Sandra nor David actually saw Baltimore break the door, a reasonable inference that can be drawn from the evidence is that Baltimore broke the door to enter the apartment. Consequently, the evidence presented at trial was sufficient to sustain Baltimore's conviction.

 Baltimore also emphasizes the disjointed, equivocal nature of Sandra's testimony and urges us to apply the incredible dubiosity rule to reverse his conviction. Incredibly dubious or inherently improbable testimony "is that which runs counter to human experience, and which no reasonable person could believe." *Campbell v. State*, 732 N.E.2d 197, 207 (Ind.Ct.App.2000). We have previously recognized that

> our courts have repeatedly held that a reviewing court may impinge upon the fact finder's resolution of credibility issues when confronted with testimony of "inherent improbability," or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity." If this Court is confronted with a situation where a *sole* witness presents inherently contradictory testimony that is equivocal or the result of coercion *and there is a complete lack of circumstantial evidence of the defendant's guilt,* then we may find that no reasonable person could believe the testimony, and we may reverse the trial court's decision.

*Sisson v. State,* 710 N.E.2d 203, 206 (Ind. Ct.App.1999) (emphases added).

Baltimore classifies Sandra's testimony as "indecipherable" and emphasizes that she offered a variety of explanations for how he entered the apartment, including breaking in through the front door or the window. Appellant's Br. p. 15. However, Sandra—who testified with the assistance of a sign language interpreter—may have confused the signs for "door" and "window," as demonstrated by this exchange:

Q. Did your door look like this before you went to sleep?

A. [Sandra:] When I slept on, when I was sleeping on the couch, um, the window, [Baltimore] had, you know, I was asleep on the couch and I couldn't hear....

Q. When you say window, do you mean door?

A. [Sandra:] The door....

Tr. p. 297.

Furthermore, as noted above, we may only impinge upon the fact finder's analysis of a witness's credibility if a sole witness presents inherently contradictory testimony and there is a complete lack of circumstantial evidence. *Sisson,* 710 N.E.2d at 206. Such is not the case here. In addition to Sandra's testimony, as previously detailed, David testified that the door was locked when he went to bed but that it was broken after the encounter with Baltimore. And New Albany Police Officer Shawn Kesling concluded that the door "had been freshly kicked in" because of the splintered wood fibers. Tr. p. 124. Pictures of the damaged door were admitted into evidence. State's Exs. 4–7. Since Sandra's testimony was not the only evidence that Baltimore broke into the apart-

ment, the incredible dubiosity rule does not apply and Baltimore's argument fails.

## III. Double Jeopardy

Baltimore argues that his convictions for burglary resulting in bodily injury and sexual battery violate the prohibition against double jeopardy guaranteed by Article I, Section 14 of the Indiana Constitution because there is a reasonable likelihood that the jury used the same evidence to sustain both convictions. Therefore, Baltimore urges us to vacate his conviction for sexual battery.

■■■ The "actual evidence test" was first enunciated in *Richardson v. State,* 717 N.E.2d 32, 49–50 (Ind.1999). Under the actual evidence test, "the Indiana Double Jeopardy Clause is violated when there is a reasonable possibility that the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Bradley v. State,* 867 N.E.2d 1282, 1285 (Ind.2007). "[T]he 'proper inquiry' is not whether there is a reasonable probability that, in convicting the defendant of both charges, the jury used *different* facts, but whether it is reasonably possible it used the same facts." *Id.* (emphases in original).

■■■ As noted above, to convict Baltimore of class A felony burglary, the State was required to prove beyond a reasonable doubt that Baltimore knowingly broke and entered the building or structure of another person with the intent to commit a felony therein, causing bodily injury to a person other than himself. I.C. § 35–43–2–1. To convict Baltimore of class D felony sexual battery, the State was required to prove beyond a reasonable doubt that Baltimore touched another person with the intent to arouse or satisfy his own sexual desires or the sexual desires of another

person when the other person is compelled to submit to the touching by force or the imminent threat of force. I.C. § 35–42–4–8.

Baltimore argues that the jury "likely used the same actual evidence to satisfy all of the elements of [the] sexual battery charge as it did to satisfy the bodily injury and intent elements of burglary." Appellant's Br. p. 26. Baltimore contends that the evidence presented to support the bodily injury element of the burglary charge consists of the officers' testimony that Sandra had red marks on her body as well as Sandra's testimony that Baltimore grabbed her arm and neck and attempted to put his hands up her shorts and on her breasts. Baltimore urges us to examine the evidence from the perspective of the jury, find that his convictions violate the principle of double jeopardy, and remedy the error by vacating the sexual battery conviction.

The evidence presented at trial shows that there were two instances of touching separated by Baltimore's interaction with Sandra's son. Baltimore entered the apartment and grabbed Sandra by the neck and arms, leaving marks on her skin. *Id.* at 128–29, 297, 317, 329. He then picked up Sandra's son, who began crying, and Sandra took the baby and placed him back in his bed. *Id.* at 304–05. Baltimore advanced towards Sandra again, grabbed her neck, dragged her into the hallway, and placed his hands under her shorts and on her breasts. *Id.* at 232, 330–31. As shown by the information relaying the charges, the State based the burglary resulting in bodily injury charge on the first incident of touching and the sexual battery charge on the second incident of touching. Appellant's App. p. 8. The two acts of touching were presented as distinct incidents that were separated by Baltimore's interaction with Sandra's baby. Thus, un-

der the actual evidence test, we do not find there to be a reasonable possibility that the jury used the same facts to sustain both convictions and Baltimore's convictions do not violate the Indiana Constitution's prohibition against double jeopardy.

### IV. Appropriateness

■ Baltimore argues that his fifty-three year sentence is inappropriate in light of his character and the nature of the offenses. Baltimore argues that it was inappropriate for the trial court to impose the maximum sentence [5] for each conviction, and he urges us to revise his sentence by imposing the advisory sentence for each conviction and running the sentences concurrently, for an aggregate term of thirty years imprisonment.

■ Pursuant to Indiana Appellate Rule 7(B), our court has the constitutional authority to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." We defer to the trial court during appropriateness review, *Stewart v. State*, 866 N.E.2d 858, 866 (Ind.Ct.App.2007), and we refrain from merely substituting our judgment for that of the trial court, *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003). The burden is on the defendant to persuade us that his sentence is inappropriate. *Chil-*

*dress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Baltimore broke into his neighbors' apartment during the night to attack Sandra, a woman whom he knew to be deaf. He grabbed Sandra by the arms and neck and touched her sexually in front of her son while her husband slept in the next room. Baltimore chose to prey on a victim with limited communication skills who would not hear him enter the apartment and would later have difficulty telling her story to the police. As the trial court noted while reflecting on Sandra's testimony, "her fear was obvious." Tr. p. 483. We cannot say that the nature of the offenses aids Baltimore's inappropriateness argument.

Turning to his character, Baltimore has a lengthy criminal history, which dates back to 1987. The trial court relied upon a 1987 criminal mischief conviction, a 2001 conviction for possession of a controlled substance, a 2005 conviction for criminal trespass and disorderly conduct, and a 1999 conviction for failure to appear when determining Baltimore's sentence.[6] *Id.* at 482. As the trial court concluded, Baltimore's pattern of criminal history is likely "to continue in a showing of disdain for the Court's authority and [he has] an unwillingness or inability to comply with the terms of the court's order." *Id.* at 483. Additionally, Baltimore's "specific selection

---

**5.** Indiana Code section 35–50–2–4 provides that a person who commits a class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Indiana Code section 35–50–2–7 provides that a person who commits a class D felony shall be imprisoned for a fixed term of between six months and three years, with the advisory sentences being eighteen months. Here, the trial court imposed the maximum sentence for each conviction and ordered the sentences to run consecutively, for an aggregate term of fifty-three years imprisonment.

**6.** The PSI lists numerous other offenses that occurred in Little Rock, Arkansas, but the trial court did not rely on these offenses over Baltimore's objection because the PSI lists the cause numbers and dispositions of these cases as "Unknown." Appellant's App. p. 286–89. Additionally, at the time of sentencing Baltimore had other charges pending in Floyd County for class D felony residential entry, class B felony rape, class D felony criminal confinement, and he was alleged to be a habitual offender.

of a helpless victim and the disregard for her baby" shows his disregard for the welfare of others and his inability to control his sexual desires. *Id.* at 481. Based on the nature of the offenses and Baltimore's character, we do not find his sentence to be inappropriate.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.