## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 09 2017, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Johnathan M. Evans, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 9, 2017 <br><br> Court of Appeals Case No. <br> 20A03-1609-CR-2259 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Trial Court Cause No. <br> 20C01-1510-F2-17 |

**May, Judge.**

[1] Johnathan M. Evans appeals his conviction of Level 2 felony robbery,[1] arguing there was insufficient evidence to sustain it.[2] Evans also argues his sentence is inappropriate. We affirm.

## Facts and Procedural History

[2] On June 23, 2015, Michael Campbell and his nephew, Dalton, were working in their store, New To You Home Furnishings, in Elkhart County, Indiana. Between 10:30 a.m. and 11 a.m., Dalton left Campbell alone in the store. About an hour later, a man entered the store and "walked around a little bit." (Tr. Vol. II at 180.) This patron was a black male in his thirties with "tight hair," (*id*. at 178), a "shadow of a beard," (*id*.), silver rimmed glasses, dark clothes, and "new-looking" white high-top sneakers. (*Id.* at 79.) Campbell and the man were the only two people in the store.

[3] The man expressed interest in a queen bed located in the back room of the store. The two men talked for a few moments before the man indicated he needed to talk to his wife. The man then briefly left the store. While the man was outside the store, Campbell noticed a "small white medium" car. (*Id.* at 182.) After a few minutes, the man came back into the store, went to the back room, and asked if Campbell would come back there for a minute. Campbell

---

[1] Ind. Code § 35-42-5-1 (2014).

[2] The trial court also entered convictions for two counts of Level 6 felony fraud. *See* Ind. Code § 35-43-5-4 (2014). Evans does not challenge those convictions.

went to the back room and was suddenly hit on the back of his head and shoulder causing Campbell to stagger and his knees to buckle. Campbell was put in a chokehold and lost consciousness. When he awoke, he was underneath several mattresses and box springs. Campbell called Dalton to have him return to the store.

[4] When Dalton arrived and discovered his uncle's injuries, he dialed 911. Officer Jennifer Smith with the Elkhart County Sheriff's Department responded to the dispatch. When she arrived at the store, Officer Smith noticed Campbell was bleeding and had lacerations to his nose, his mouth, and his left temple. Campbell's wallet was missing, along with a laptop and money from the cash register. A metal tire iron was found near where Campbell was attacked. Campbell could not identify it as having been in the store previously.

[5] A few hours later, Campbell's credit card was used to purchase items at Target and Walmart. Security cameras at Walmart captured footage of Evans leaving Walmart and getting into a silver Volkswagen Passat. Based on the security footage, police later stopped Evans and searched the silver car. During the search, police found Campbell's wallet, a laptop, and receipts from Target, Walmart, and an eyeglass store. Police also found a tool pack in the trunk of the car that was missing its tire iron.

[6] The next day, Campbell met with Detective Kenneth Saeger at the Elkhart Sheriff's Department. Campbell described his attacker as a black male in his thirties, Campbell's height of 5'9" or "maybe possibly higher," (*id.* at 129), with

"tight hair," (*id.*), dark clothing, and glasses. Campbell then viewed a six-person photograph array of potential suspects and identified a picture belonging to someone other than Evans as his attacker. Five days later, when Campbell returned to the Sheriff's Office, Campbell saw a photo of Evans that Detective Saeger was holding and told him "that's the man," (*id.* at 207), after recognizing the defendant from his glasses, "shadow beard," (*id.* at 208), and "shadow mustache." (*Id.*)

[7] Evans was charged with Level 2 felony robbery and two counts of Level 6 felony fraud.[3] After a two-day jury trial, the jury found Evans guilty as charged. At Evans' sentencing hearing, the trial court identified the following aggravating factors: (1) the fact Campbell was over sixty-two years old; (2) Evans' criminal record including four juvenile cases, six felonies, a habitual offender adjudication, ten failures to appear, one parole violation, one probation violation, and two pending cases; (3) Evans' daily marijuana use evidencing contempt for the laws of Indiana; (4) Evans' high risk to reoffend; (5) Evans' pending probation revocation; and (6) Evans' failure to be rehabilitated by prior sanctions. The trial court also identified mitigating factors such as Evans' employment, his intelligence, his admission of the fraud charges, his cooperation with the investigation, and his expressed remorse.

---

[3] Ind. Code § 35-43-5-4 (2014).

[8]     Evans was sentenced to twenty-eight years for the Level 2 felony robbery and to one year for each of the Level 6 felony fraud charges, with the sentences to be served concurrently.

# Discussion and Decision

## 1. Sufficiency of the Evidence

[9]     When reviewing sufficiency of the evidence in support of a conviction, we do not reweigh evidence or assess credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). We consider only the probative evidence and reasonable inferences in the light most favorable to the judgment. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Binkley v. State*, 654 N.E.2d 736, 737 (Ind. 1995), *reh'g denied*. Conflicting evidence is considered most favorably to the verdict. *Drane*, 867 N.E.2d at 146. We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

[10]    To prove Evans committed Level 2 robbery resulting in serious bodily injury, the State had to prove beyond a reasonable doubt: (1) Evans (2) knowingly or intentionally (3) took property (4) from Campbell (5) by using or threatening the use of force on any person, and (6) that conduct resulted in serious bodily injury

to Campbell. *See* Ind. Code § 35-42-5-1(1). Evans argues the State failed to present sufficient evidence beyond a reasonable doubt that Evans committed the robbery because Campbell's testimony was incredibly dubious.

[11] In Indiana, the rule of incredible dubiosity requires that there be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). This rule is rarely applicable and should be applied here only if Campbell's "testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *See Rose v. State*, 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015). Further, the witness's testimony must run "counter to the human experience." *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). Evans argues the rule of incredible dubiosity should apply here because Campbell provided inherently contradictory or equivocal testimony. We disagree.

[12] Evans asserts incredible dubiosity applies because Campbell initially said the attacker's car was white, not silver; Campbell said the attacker was 5'9" when Evans is 6'1"; and Campbell identified another man as being the attacker in a six-person photograph array the day after the attack. These arguments do not render Campbell's testimony incredibly dubious. Campbell testified he originally chose a different potential suspect's photo because Campbell could see "a little bit of his beard" and in Evans' photo Evans appeared to have a longer beard and hair, no mustache, and no glasses. (Tr. Vol. II at 205). While some of Campbell's pre-trial statements were inconsistent with his trial

testimony, Campbell was unequivocal during his trial testimony that Evans was his attacker. The incredible dubiosity rule does not apply where a witness's testimony is inconsistent with his pre-trial statements, as long as he did not contradict himself during his trial testimony. *Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002). Campbell did not contradict himself during his testimony at trial. Moreover, it is the role of the jury "to resolve variations in testimony," such as the color of a vehicle. *See Edwards v. State*, 753 N.E.2d 618, 623 (Ind. 2001) (a witness's testimony as to the color of a car being contradictory to the rental company records was not incredibly dubious). Also, the fact that Evans is four inches taller than the height Campbell initially stated does not run so counter to human experience that no reasonable person could believe it.

[13] Nor is there an absence of circumstantial evidence in this case. Circumstantial evidence alone can sustain a verdict "if that circumstantial evidence supports a reasonable inference of guilt." *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000). Our Indiana Supreme Court has also held "where there is circumstantial evidence of an individual's guilt, reliance on the incredible dubiosity rule is misplaced." *Moore*, 27 N.E.3d at 759. The jury heard testimony that, two hours after the robbery, Evans purchased items from Target and Walmart using Campbell's credit card. Evans was then pulled over by police in a silver car, and during the search of the car, police found Campbell's wallet and identification, a laptop, and receipts from Target, Walmart, and an eyeglass store. There was also security camera footage from the stores, and Campbell identified Evans from that footage because of Evans' white sneakers. As

Campbell's testimony was not inherently improbable or counter to human experience and as there was circumstantial evidence of Evans' guilt, we hold Campbell's testimony was not incredibly dubious.

Evans' arguments are an invitation to reweigh evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court will not reweigh evidence or judge the credibility of witnesses). Based on the record before us, we hold the evidence was sufficient for the jury to find Evans guilty of robbery resulting in serious bodily injury to Campbell. *See*, *e.g.*, *Baltimore v. State*, 878 N.E.2d 253, 259-60 (Ind. Ct. App. 2007) (holding evidence sufficient to support Class A burglary conviction where incredible dubiosity was not applicable), *trans. denied*.

## 2. Inappropriate Sentencing

Evans also argues his twenty-eight-year sentence is inappropriate under Indiana Appellate Rule 7(B). Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). On review, we "should focus on the forest – the aggregate sentence – rather than the trees" – the individual sentences. *See Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Our review is deferential to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972

N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. The defendant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[16] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (2007). Evans' sentence of 28 years is 10 ½ years more than the advisory sentence of 17 ½ years for a Level 2 felony, but less than the maximum possible sentence of 30 years. *See* Ind. Code § 35-50-2-4.5. Concurrent with the Level 2 felony sentence, Evans is serving two concurrent one-year sentences for his Level 6 felony fraud convictions. The sentencing range for a Level 6 felony is 6 months to 2 ½ years, with the advisory sentence being one year. Ind. Code § 35-50-2-7(b). We determine the appropriateness of a deviation from the advisory sentence by reviewing whether there is anything about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*.

[17] The nature of the robbery conviction is not more egregious than the statutory definition of the offense itself as Campbell's property was taken by use of force, and Campbell's injuries constituted "serious bodily injury" under Indiana Code § 35-31.5-2-292(2). Despite not needing medical attention, Campbell was hit over the head, held in a chokehold until unconscious, and later found bleeding and with lacerations on his face. The nature of the two counts of fraud also

were not more egregious than the statutory definition of Level 6 felony fraud as Evans, with intent to defraud, obtained property by using Campbell's credit card without Campbell's consent. *See* Ind. Code § 35-43-5-4(1)(C). We conclude the nature of the offenses was not more egregious than the statutory definitions of Level 2 felony robbery and Level 6 felony fraud, and we turn now to assessing whether Evans' twenty-eight-year sentence is inappropriate based on his character.

[18] Regarding Evans' character, the trial court acknowledged all the mitigating circumstances presented by Evans and his counsel, including: Evans' intelligence, Evans' employment prior to incarceration, his cooperation with the preparation of the Pre-Sentence Investigation report, and his expressed remorse. The trial court also identified multiple aggravating circumstances: the victim's age of sixty-two at the time of the attack; Evans' criminal record consisting of four juvenile cases, six felonies plus a habitual offender adjudication, ten failures to appear, one parole violation, one violation of probation, and two pending cases; Evans' daily use of marijuana, which evidences contempt for the laws of Indiana; Evans' high risk to reoffend; his pending probation revocation; and Evans' other sanctions including probation, costs, fines, community transitions, community corrections, and juvenile boot camp not resulting in rehabilitation. Evans contends that because the mitigating factors show there is more to his character than his criminal record, his sentence is too long because it exceeds the advisory sentence. However, as the wide breadth of his criminal record reflects poorly on his character, Evans has failed to show the nature of

the offense and his character render his twenty-eight-year sentence inappropriate. *See Stephenson v. State*, 53 N.E.3d 557, 562 (Ind. Ct. App. 2016) (sentence in excess of advisory sentence appropriate when Stephenson's criminal history included two domestic violence related convictions).

# Conclusion

[19] The State presented sufficient evidence Evans committed Level 2 felony robbery resulting in serious bodily injury, and his sentence is not inappropriate. Accordingly, we affirm.

[20] Affirmed.

Brown, J., and Pyle, J., concur.