## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2020, 9:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Berger
Law Office of Donald J. Berger
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jermaine Newsome, Jr.,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

July 17, 2020

Court of Appeals Case No.
20A-CR-7

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1907-F2-12

**Brown, Judge.**

[1] Jermaine Newsome, Jr., appeals his convictions for burglary as a level 3 felony, criminal recklessness as a level 5 felony, and battery as a level 5 felony. He claims the evidence is insufficient to sustain his convictions. We affirm.

*Facts and Procedural History*

[2] On June 29, 2019, Alijah Perry visited Keyoshia Minnis and her boyfriend, DeAngelo Martin, at their residence which contained marijuana and a bong in the kitchen. Six children were present at the residence, and Perry played video games with Martin. Martin and Newsome had four telephone conversations beginning at 4:31 p.m. and ending with a phone call at 5:03:21 p.m., which lasted thirty-two seconds. At some point, Minnis left and was walking back to her residence when she saw two people whom she did not know walking back and forth in front of the residence. She entered her house, and her niece asked if they could go to the park. "[S]ome people ran in" and started shooting.[1] Transcript Volume I at 107. Minnis grabbed her niece and her daughter, went upstairs, and called 911. Perry heard commotion and gunshots coming from the front of the residence, suffered gunshot wounds to his back, chest, and arm while he was on the couch, dropped to the floor, and exited the residence.

---

[1] Minnis testified "my oldest niece is going to follow me out the front door, I was going to leave out, and as I open the door some people ran in." Transcript Volume I at 107. She also stated: "when I opened the door the person was opening the door." *Id.* at 108. She answered affirmatively when asked: "You saw one person open the door?" *Id.* She also stated: "When I was opening the door, someone was coming in and when they came in, they started shooting." *Id.* at 109.

[3]     South Bend Police Officer Joseph Stitsworth was dispatched to the residence around 5:05 p.m.  He spoke to Minnis, and she gave him a cell phone which she said was dropped by one of the suspects when they were running out of the residence and she found just outside the front door.  Police discovered shell casings at the scene including Federal brand .45 caliber casings and USA brand 9 mm casings.

[4]     South Bend Police Detective John Comeau obtained a search warrant for the phone, searched the contents of the phone, and determined it belonged to Newsome.[2]  Detective Comeau assembled a photo array on June 29, 2019, which included a BMV photo of Newsome and five other individuals with similar physical descriptors.  That same day, South Bend Police Officer Javier Bourne showed the photo array to Minnis, and she placed her initials and the date on Newsome's photograph.

[5]     On July 12, 2019, Detective Comeau executed a search warrant on Newsome's residence and discovered a box of Federal brand .45 caliber ammunition with twelve or thirteen bullets missing on a dresser with a trophy bearing Newsome's name and a learner's permit belonging to Newsome.

---

[2] Detective Comeau testified that most of the photographs on the phone depicted Newsome, he "saw the g-mail account logged in for the" phone, "[h]is Facebook account was logged into the phone," and "[t]he text messages occasionally referred to him by name."  Transcript Volume II at 33.  Mitchel Kajzer, the Director of the Cyber Crimes Unit at the St. Joseph's County Prosecutor's Office, conducted a forensic analysis of the phone and determined that the email address associated with the phone contained Newsome's name.

[6] The State charged Newsome, as amended, with: Count I, burglary as a level 3 felony; Count II, criminal recklessness as a level 5 felony; and Count III, battery as a level 5 felony.

[7] At the jury trial, Officer Stitsworth testified that Minnis gave him a cell phone which she said was dropped by one of the suspects when they were running out of the apartment and which she found just outside the front door of the apartment. Detective Comeau testified that he assembled a photo array on June 29, 2019, which included a BMV photo of Newsome and five other individuals with similar physical descriptors. He testified that State's Exhibit 26A was a photo of Newsome which he had in the photo array. The court admitted State's Exhibit 26A showing Minnis's initials on the photo. Officer Bourne testified that he showed the photo array to Minnis on June 29, 2019, the day of the shooting, and that she placed her initials and the date on the exhibit. During cross-examination of Minnis, when asked if she saw Newsome that day, she answered: "I can't remember, sir." *Id.* at 112. When asked if she recalled whether the police gave her an array of photos to choose from and whether she picked one, she answered: "I don't remember anything. I don't. I was trying to forget that day. I don't remember nothing. It's messing up my life." *Id.* When the court asked a question from the jury regarding whether she found a cell phone and gave it to the police, she answered: "No, sir. I mean, no, ma'am. When I opened – when the police was knocking at the door, I stepped out and when I stepped out, I stepped on the phone and he asked me if it was mine and

I said, 'No.'" *Id.* at 115.  She testified the phone was "right there at the front door." *Id.*

[8]     Newsome's counsel called Martin as a witness, and he testified that he had between two and four telephone conversations with Newsome.  When asked if he saw Newsome that day, he answered: "Not at all." *Id.* at 122.  He indicated he was in the living room with Perry when the shooting occurred and that he did not see anyone and ran straight out the back door.  The court read a question from the jury asking if he was expecting Newsome to come over that day, and he answered: "No.  I mean, well, I mean, I'm sorry.  Yeah, we had a conversation, but we was suppose to like holler at each other, like, just talk, have a conversation about some stuff, but there wasn't really no, like, no, feud, like, an argument, nothing like that." *Id.* at 134-135.  The court then stated: "Were you, I'm not sure if I got this one out?  'Were you expecting the defendant that day to come over?'" *Id.*  Martin answered: "Yes, but not at that time." *Id.*

[9]     The jury found Newsome guilty as charged.  The court sentenced Newsome to eleven years on Count I, two years on Count II, and two years on Count III, and ordered that the sentences be served consecutive to each other.

### *Discussion*

[10]     Newsome argues, without citation to the record, that the evidence was insufficient because Minnis failed to identify him at trial and Martin made no

arrangement to meet him and did not expect him to come over.[3]  When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses.  *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*.  We look to the evidence and the reasonable inferences therefrom that support the verdict.  *Id.*  Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom.  *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990).  On appellate review of circumstantial evidence of guilt, this Court need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but rather whether inferences may be reasonably drawn from that evidence which support the verdict beyond a reasonable doubt.  *See id.* at 1318.  Identification testimony need not necessarily be unequivocal to sustain a conviction.  *Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996).  Also, a conviction may be sustained on the uncorroborated testimony of a single witness or victim.  *Baltimore v. State*, 878 N.E.2d 253, 258 (Ind. Ct. App. 2007), *trans. denied*.  We will affirm if there

---

[3] Newsome does not cite to the record in the argument section of his brief.  Ind. Appellate Rule 46(A)(8) provides that the argument of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning," and that "[e]ach contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."  Ind. Appellate Rule 22(C) governs references to the record on appeal and provides that "[a]ny factual statement shall be supported by a citation to the volume and page where it appears in an Appendix, and if not contained in an Appendix, to the volume and page it appears in the Transcript or exhibits, e.g., Appellant's App. Vol. II p.5; Tr. Vol. I, pp. 231-32."

exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Jordan*, 656 N.E.2d at 817.

[11] The record reveals that Martin was at Minnis's residence on June 29, 2019, and had four telephone conversations with Newsome within thirty minutes of the shooting including one call which was placed at 5:03:21 p.m. which was a minute or so before the shooting. Officer Stitsworth testified that he was dispatched to the residence at around 5:05 p.m., and Minnis gave him a cell phone which she said was dropped by one of the suspects when they were running out and which she found just outside the front door. Detective Comeau determined the phone belonged to Newsome. Minnis was presented with a photo array on the day of the shooting and placed her initials and the date on Newsome's photograph. Police discovered shell casings at the scene including Federal brand .45 caliber casings, and Detective Comeau discovered a box of Federal brand .45 caliber ammunition with twelve or thirteen bullets missing in Newsome's residence.

[12] Based upon the record, we conclude the State presented evidence of probative value from which the jury could have found Newsome guilty beyond a reasonable doubt of the charged offenses.

[13] For the foregoing reasons, we affirm Newsome's convictions.

[14] Affirmed.

Najam, J., and Kirsch, J., concur.